`UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATHANIEL KEITH CARR,
        Prisoner,

v.                                          Case No. 8:24-cv-1368–KKM–AAS
                                            Case No. 8:22-cr-153-KKM-AAS

UNITED STATES OF AMERICA,
        Respondent.
_____

## ORDER

Prisoner Nathanial Keith Carr moves to vacate his convictions for conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and using a firearm during a crime a violence, for which he serves 318 months. *See* 28 U.S.C. § 2255. Carr claims that counsel rendered constitutionally ineffective assistance and that the United States breached the parties' plea agreement. Because his claims lack merit, Carr's motion to vacate is denied.

## I.    Background

Under a plea agreement, Carr pleaded guilty to one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and (b) (Count One); two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and (b) (Counts Two and Four); and two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c)(1)(A) (Counts Three and Five). (Crim. Docs. 71 and 136.) The United States agreed to recommend a

downward departure from the sentencing guidelines range if it determined that Carr provided substantial assistance in the investigation or prosecution of others. (*Id*. at 5–6.)    The presentence report calculated an advisory guidelines range of 135 to 168 months for Counts One, Two, and Four, based on Carr's total offense level of 30 and his criminal history category of IV. (Crim. Doc. 207 at ¶ 155 and 157.) Carr also faced two consecutive mandatory sentences of 84 months for Counts Three and Five. (*Id*. at ¶¶ 155 and 156.) At sentencing, the district court described Carr's culpability as "mid-range" compared to his codefendants' culpability before sentencing him to a total of 318 months. (Crim. Doc. 395 at 34.) The sentence consists of 150 months for Counts One, Two, and Four, followed by two consecutive terms of 84 months for Counts Three and Five. (Crim. Doc. 216 at 3.)

Carr filed no appeal. He now moves to vacate his convictions and sentence and claims that counsel rendered constitutionally ineffective assistance by not adequately explaining the plea agreement (Ground One), by grossly misrepresenting his sentencing exposure (Ground Two), and by submitting an inadequate sentencing memorandum (Ground Three). He further claims that the United States breached the cooperation provision of the plea agreement (Ground Four). He wishes to withdraw his guilty plea. (Civ. Doc. 1 at 23.) The United States responds that Carr's claims lack merit. (Civ. Doc. 3.)

An earlier order notifies Carr that he may reply no later than thirty days after the United States responds. (Civ. Doc. 2.) The United States filed

its response on August 12, 2024. To date, Carr has not replied nor sought an extension of time to do so.

## II.    Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.' " *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)). For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267(11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness

claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Carr must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Carr must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S.

5

at 690–91. A prisoner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III.    Discussion

### A.    Grounds One and Two

6

In Ground One, Carr claims counsel rendered constitutionally ineffective assistance by not adequately explaining the plea agreement. According to Carr, counsel did not allow him sufficient time to read and understand the agreement before coercing him to sign it by promising Carr would receive a 14-year sentence. (Civ. Doc. 1 at 15.) Carr complains that, because he received only a ninth-grade education, he required more time to fully understand the agreement. He did not understand that he was pleading guilty to using a firearm to commit robbery. Carr claims he would not have pleaded guilty if he had known the plea agreement stated he used a firearm and he would receive a lengthy sentence.

In a related claim at Ground Two, Carr claims counsel rendered constitutionally ineffective assistance by grossly misrepresenting his sentencing exposure. According to Carr, counsel promised he would receive a 14-year sentence. (*Id*. at 17–18.)

"The question of whether an attorney provided ineffective assistance of counsel in the context of a guilty plea is subject to the familiar two-part inquiry first spelled out in *Strickland*[.]" *Riolo v. United States*, 38 F.4th 956, 967 (11th Cir. 2022). To establish deficient performance, the defendant must show counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Premo v. Moore*, 562 U.S. 115, 129 (2011); *Hill v. Lockhart*, 474 U.S.52, 58–59 (1985).

"Moreover, to obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

Carr's claim is refuted by the plea agreement and his sworn statements at both the plea hearing and the sentencing hearing. Containing no promise of a specific sentence, the plea agreement states that Carr faced a maximum sentence of 20 years for Counts One, Two, and Four. (Crim. Doc. 136 at 2.) The plea agreement states that, for Counts Three and Five, Carr faced a "mandatory minimum term of imprisonment of seven years, a maximum term of life imprisonment, consecutive to any other term of imprisonment[.]" *Id.* Carr initialed each page and signed the plea agreement.

At the plea hearing, Carr confirmed that he reviewed the plea agreement with counsel and understood its terms. (Crim. Doc. 400 at 12–13.) Carr explicitly confirmed he understood that, with respect to Counts Three and Five, he "knowingly used, carried, brandished or discharged a firearm" during and in relation to the robberies charged in Counts Two and Four. (*Id.* at 27.) Car also acknowledged he understood the minimum and maximum penalties he faced for each count (*id.* at 17–19):

> COURT:    I'm going . . . to go over the sections that address the potential punishment that you are facing to make sure that you understand what it is that you are facing.

And if you look at page two of your plea agreement there is a section that's titled Minimum and Maximum Penalties. And it takes up almost a whole page. And it outlines that Counts One, Two, and Four—so, Count One is the conspiracy count. Count Two is the Zephyrhills residence robbery. And Count Four is the Cape Coral residence robbery. That those each carry a maximum sentence of 20 years imprisonment[.] . . .

Then Count Three carries a mandatory minimum term of imprisonment of seven years, a maximum term of life, consecutive to any other term of imprisonment[.] . . .

Now, Count Five is essentially identical to Count Three. Count Three and Five are both the firearm charges that relate to the Zephyrhills residence robbery and the Cape Coral residence robbery.

So, let me just take a few minutes to break this down. So, in terms of your federal prison time that you are looking at. For Counts One, Two and Four, you are not looking at any minimum mandatory, but you are looking at a maximum sentence on each of those counts of 20 years, and those could be added together or they could be consecutive and occur at the same time.

9

> Count Three and Count Five each have a mandatory minimum term of imprisonment of seven years and a maximum of life. So, each of those requires seven years in prison and it says that would be consecutive to any other term of imprisonment. So, Three and Five would be consecutive to one another and then also consecutive to any time that you get for One, Two, and Four.
>
> So, under the statute then, you are facing a minimum, really, at least of the 14 years, seven years tied to Count Three and seven years to Count Five plus whatever sentence you get for Counts One, Two, and Four. . . .
>
> Do you understand, Mr. Carr, all of the potential punishment that I have gone over with you?

> CARR:      Uh-huh.

> COURT:    You have to answer yes or no.

> CARR:      Yes, ma'am. I'm sorry. Yes, ma'am.

Carr also affirmed his understanding that counsel could not guarantee a particular sentence and that the district court would decide his sentence at the sentencing hearing. (*Id*. at 23.)

During the plea hearing, Carr confirmed that, other than the promises contained in the plea agreement, no one had promised him anything to persuade him to plead guilty. (*Id*. at 15) And he confirmed that no one threated him, coerced him, or otherwise tried to force him in any way to plead guilty. (*Id*. at 16.) At the conclusion of the plea hearing, the Magistrate Judge found that Carr was pleading guilty freely and voluntarily, and Carr never objected to this finding. (*Id*. at 32.)

During his allocution at the sentencing hearing, Carr initially expressed to the district court that he did not understand when he pleaded guilty that he faced consecutive sentences. (Crim. Doc. 395 at 25 and 28.) However, after some elaboration, Carr ultimately expressed that he, in fact, understood (*id*. at 28–29):

> COURT:    Mr. Williams, you want to have a moment with your client about the first comments he made with regards to what he was pleading to and his awareness?

> COUNSEL: We've discussed that at length, Judge. I've always said it was going to be consecutive too, so I don't think there's anything more. I even got over here this morning early and talked to him again this morning, so. Maybe initially he kind of felt that way, but he knows what he's looking at, and he knew when we entered the plea what he's looking at, if that makes any sense. He does.

CARR:      I just didn't know that---I knew that [I] was looking at anywhere from 14 years from the Count Three, Count Three and Count Five. I just didn't know that it would be run consecutive to my guide range until I got my PSR. Once I got my PSR, that's when I knew that I was getting ranked second.

COURT:     The way it works, and it sounds like your Counsel did tell you this, is Count Three and Five are mandatory. I have no discretion. Fourteen years is the minimum. You're getting that, period.

CARR:      Yes, ma'am.

COURT:     And then your additional counts that you pled guilty to, themselves produce a sentencing range of 135 to 168 months.

Now, under the guidelines, they're advisory. They're not mandatory. I have to fashion a sentence that I think is sufficient but not greater than necessary and I'll go through the factors I have to consider in doing that.

But your sentence can ultimately be anywhere from 14 years, that's the floor, I think up to 20 years for each of Count One, Two, and Four. So it's a wide range. Does that make sense?

12

| | | |
|---|---|---|
| CARR: | Yes, ma'am. | |

CARR:     Yes, ma'am.

COURT:    You're saying that you understood that?

CARR:     Yes, ma'am.

COURT:    Okay. I just wanted to clarify that you understood that and there was no confusion as to that point.

CARR:     Yes, ma'am.

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). However, a defendant's statements at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements under oath at a plea colloquy are true."). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements are false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Carr offers no evidence to disavow his affirmations under oath that he understood the penalties that he faced and that no one promised him anything to induce his pleading guilty. "Courts should not upset a plea

solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). To substantiate his *post hoc* assertion that he would have proceeded to trial but for counsel's alleged promise of "at most 14 years[,]" Carr claims that counsel grossly underestimated his sentencing exposure. (Civ. Doc. 1 at 17.) This argument lacks merit because, as the district court explained, a 14-year sentence was "the floor," and therefore, a prediction of a 14-year sentence was not inaccurate. (Crim. Doc. 395 at 29.) Nevertheless, an inaccurate sentencing prediction is insufficient to invalidate a guilty plea if the defendant knew the maximum possible sentence. *See United States v. Himick*, 139 F. App'x 227, 228–29 (11th Cir. 2005) (citing *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) ("A defendant's reliance on an attorney's mistaken impression about the length of this sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *see also United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (holding that counsel was not ineffective for misadvising the defendant of his potential sentence when the court informed him of the maximum possible sentence); *United States v. Mayo*, No. 23-13278, at *4 (11th Cir. Mar. 7, 2025) (following *Pease* and *Bradley* to conclude that counsel's failure to advise the defendant of a possible career offender enhancement did not invalidate the guilty plea when the court informed the defendant of the

14

possibility of a statutory maximum sentence) Carr confirmed in both the plea agreement and at the plea hearing his understanding that he faced a maximum possible sentence of life imprisonment on Counts Three and Five. Because he knew that he faced a life sentence, Carr cannot show he was prejudiced by counsel's alleged underestimation of his sentencing exposure.

Besides his faulty assertion that counsel grossly underestimated his sentencing exposure, Carr offers no contemporaneous evidence that suggests he would have rejected the plea agreement had he understood the maximum penalties he faced. Absent any such contemporaneous substantiating evidence, Carr's post-hoc assertion that he would have insisted on going to trial cannot satisfy *Strickland's* prejudice prong. *Martin v. United States*, 949 F.3d 662, 669 n.4 (11th Cir. 2020) (concluding that the defendant could not show prejudice because no contemporaneous evidence substantiated his claim that he would not have pleaded guilty but for counsel's alleged erroneous advice concerning the deportation consequences of his guilty plea); *United States v. Smith*, 983 F.3d 1213, 1222 (11th Cir. 2020) ("The defendant's 'own conclusory after-the-fact assertion' that he would have accepted a guilty plea, without more, is insufficient to [demonstrate prejudice]."); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (concluding the defendant failed to establish prejudice when he offered only "after the fact testimony concerning his desire to plead").

Carr's claim fails for the additional reason that he cannot show that "a decision to reject the plea bargain would have been rational under the

circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The United States' evidence against Carr, as summarized in the factual basis supporting Carr's guilty plea, was substantial, and Carr admitted these facts without objection. (Crim. Doc. 400 at 30.) Furthermore, he benefitted significantly by pleading guilty. Under the plea agreement, the United States agreed not to charge him with any other known federal offenses and agreed to recommend a two-level downward adjustment for acceptance of responsibility. (Crim. Doc. 136 at 4–5.) Consequently, Carr fails to show he was prejudiced by counsel's performance because he has not known that a decision to reject the plea agreement would have been rational.

### B.    Ground Three

Carr claims counsel rendered constitutionally ineffective assistance by submitting an inadequate sentencing memorandum. Carr complains that the memorandum should have emphasized his relatively minor role in the robberies, including that he did not plan the robberies or physically assault anyone. He argues counsel should have emphasized specific mitigating circumstances, including his abandonment as a child, limited education, and vulnerability to coercion. Instead, Carr agues, counsel presented a meager three-page memorandum in which he offered "a generalized narrative about the difficulties of sentencing and a few sentences about Mr. Carr fully cooperating and feeling sorry for his crimes." (Crim. Doc. 1 at 18–20.)

"Section 3B1.2 of the Sentencing Guidelines directs the sentencing court to decrease a defendant's offense level by two levels '[i]f the defendant

16

was a minor participant in any criminal activity.' " *United States v. Gruezo*, 66 F.4th 1284, 1293 (11th Cir. 2023) (quoting U.S.S.G. § 3B1.2). "A minor participant is one 'who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.' " *Id*. (quoting U.S.S.G. § 3B1.2, cmt. 5). "The defendant 'bears the burden of proving a mitigation role in the offense by a preponderance of the evidence.' " *Id*. (quoting *United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999)).

In a sentencing memorandum, counsel emphasized Carr's cooperation with law enforcement and requested that Carr remain incarcerated locally so that he would be available to testify against his codefendants who proceeded to trial. (Crim. Doc. 211 at 2.) Counsel further emphasized Carr's remorse and his desire to be a productive member of society. Counsel urged the district court to consider that the victims were known to be actively involved in drug trafficking. At sentencing, counsel emphasized Carr's acceptance of responsibility and urged the district court to impose a sentence at the low-end of the guidelines range, or 20 years. (Crim. Doc. 399 at 24.)

Before imposing its sentence, the district court asked the United States to compare Carr's culpability to his codefendants' culpability. (*Id*. at 20.) The United States reported that "there was no leader in this conspiracy" and described Carr's culpability as "sort of in the middle, not at the very top . . . [and] certainly not at the very bottom." (*Id*. at 22.) After receiving information about Carr's role in the conspiracy, the district court described Carr's participation as "mid-range." (*Id*. at 34.)

Although counsel neither emphasized Carr's minor role in the conspiracy nor moved for a minor-role reduction, Carr cannot show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Carr points to no facts in the record that show he was eligible for a minor-role reduction under U.S.S.G. § 3B1.2 or that he was less culpable than his codefendants. Instead, the record shows Carr's culpability was comparable to his codefendants' culpability. Carr admitted that he and his codefendants together robbed two residences while holding firearms. (Crim. Doc. 136 at 19–23.) Carr and his codefendants used force and threats of force to steal money, drugs, antiques, and smart phones. (*Id*.) Carr and his codefendants targeted the residences because they believed they would find the proceeds of drug trafficking inside. (*Id*. at 23.)

Because no facts support a finding that Carr was less culpable than his codefendants, counsel did not perform deficiently by instead emphasizing Carr's cooperation, remorse, and desire to be a productive member of society, both in a sentencing memorandum and at the sentencing hearing. Counsel's decision to emphasize these mitigating circumstances instead of Carr's abandonment as a child, limited education, and vulnerability to coercion was a reasonable, strategic decision. *See Chandler*, 218 F. 3d at 1319 ("Counsel is not required to present every nonfrivolous defense; nor is counsel required to present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy."). And the district court considered all 18 U.S.C. § 3553(a) factors,

including Carr's history and characteristics, before it determined that a mid-level sentence was appropriate. (Crim. Doc. 395 at 31–34.) Carr's undeveloped claim "that a different strategy would have been better does not meet his burden under *Strickland*." *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (citing *Ward*, 592 F.3d at 1164 ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

Furthermore, Carr cannot show that he was prejudiced by counsel's performance. To demonstrate prejudice, Carr must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different absent counsel's allegedly deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020) (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)). Carr shows he was prejudiced by neither counsel's decision not to advocate for a minor-role reduction nor counsel's decision to emphasize certain mitigating circumstances. Nothing in the record shows that the district court would have imposed a shorter sentence if counsel had advanced different arguments at sentencing. In fact, the record shows the nature and circumstances of Carr's offenses were the primary factors that the district court considered when sentencing Carr (Crim. Doc. 395 at 32):

> [T]he primary driver for a very significant term of imprisonment is the nature and the circumstances of the offenses. It is remarkable to me that no one was seriously harmed or killed given the kind of

robberies that occurred here, the number that occurred here, the number of victims involved here and the firearms that were used here.

I find it to be a particularly aggravating offense that there were minor children at least in one of the robberies, and that you and your codefendants, co-conspirators were aware that there were children there and yet seemingly still threatened the lives of the two adults who were in the home.

I think the nature and the circumstances of this offense really drive the significant term of imprisonment because of how violent, repeated and planned they were.

Accordingly, Carr has not shown a reasonable probability of a different sentence absent counsel's performance.

### C.    Ground Four

Carr claims the United States breached the cooperation provision of the plea agreement by neglecting to notify the district court of his cooperation and mitigating circumstances. He contends that he "fully met his own obligations under [the cooperation provision] by providing a truthful and complete listing of events and cooperating with authorities." (Crim. Doc. 1 at 21–23.) According to Carr, the United States falsely accused

him in its sentencing memorandum of participating in additional robberies and recommended a sentence at the high end of the guidelines range.[1]

The United States is bound by promises it makes in a plea agreement. *See generally United States v. Tripodis*, 94 F.4th 1257, 1261 (11th Cir. 2024). "To evaluate whether the government breached a plea agreement, we 'determine the scope of the government's promises' and ask 'whether the government's actions were inconsistent with what the defendant reasonably understood when he entered his guilty plea.' " *Id*. (quoting *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004)). "Notably, a plea agreement's silence on an issue does not bind the government to any promise." *Id*. (citing *In re Grand Jury Proceedings*, 819 F.2d 984, 986 (11th Cir. 1987)).

In the plea agreement, the United States agreed to "consider whether [Carr's] cooperation qualifies as 'substantial assistance' . . . warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant

---

[1] The United States correctly responds that Carr procedurally defaulted this claim by neglecting to raise it on direct appeal. (Civ. Doc. 3 at 10–12.) For judicial economy, the district court rejects this claim as meritless. *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020 ("As we have said many times and as the Supreme Court has held, a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

to 18 U.S.C.§ 3553(e), or (3) both." (Crim. Doc. 136 at 6.) Carr understood that "the determination as to whether 'substantial assistance' has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida" and that he "cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise." (*Id.*)

"The government has the power, but not a duty, to file a substantial assistance motion." *Lanier v. United States*, 769 F. App'x 847, 850 (11th Cir. 2019) (citing *United States v. Dorsey*, 554 F.3d 958, 960 (11th Cir. 2009)). "The prosecutorial discretion to refuse to file a substantial assistance motion is subject to judicial review only if it is based on an unconstitutional motive, such as the defendant's race or religion, or is not rationally related to any legitimate government end." *Id.* (citing *Wade v. United States*, 504 U.S. 181, 185–86 (1992)). "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing." *Wade*, 504 U.S. at 186

Carr cannot show the United States breached the plea agreement by neglecting to inform the district court of his cooperation or mitigating circumstances. At sentencing, the United States notified the district court that it expected to move under § 5K1.1 for a downward departure for neither Carr nor any codefendant but stated that Carr was a potential witness in an upcoming trial. (Crim. Doc. 395 at 22.) Because Carr had not yet testified as a witness, Carr cannot show the United States breached its agreement by not

22

notifying the district court of cooperation that he had not provided at the time of sentencing. Carr never alleges that the United States' failure to notify the district court of his cooperation or its decision not to file a § 5K1.1 motion was based on an unconstitutional motive.

Furthermore, Carr cannot show the United States breached the plea agreement by recommending a sentence at the high end of the guidelines range. In its sentencing memorandum, the United States argued that a high-end sentence would "reflect[] the gravity of [Carr's] crimes, promote[] respect for the law, provide[] just punishment, and most importantly, protect[] the community." (Crim. Doc. 210 at 4–5.) Such recommendation does not violate the plea agreement because the plea agreement contains no promise of a specific sentence but reserves the United States' right to make sentencing recommendations. (Crim. Doc. 136 at 16.) The United States "was free to recommend a [high-end sentence]" because "[t]here is no promise within the plea agreement [of a specific sentence]." *Tripodis*, 94 F.4th at 1262.

Finally, Carr cannot show that the United States breached the plea agreement by notifying the district court of his participation in additional robberies for which he was not indicted. Carr was charged with and pleaded guilty to robberies that occurred on January 2 and 14, 2021. (Crim. Doc. 1 at 2–4; Crim. Doc. 136 at 19–23.) In its sentencing memorandum, the United States reported that Carr "was an active and willing participant in [a] conspiracy and played a role in multiple robberies," including robberies that occurred on January 2, 13, 14, and 18, 2021. (Crim. Doc. 210 at 3.)

The United States did not breach the plea agreement by reporting Carr's participation in robberies for which he was not indicted. Nothing in the plea agreement prevents the United States from notifying the district court of Carr's unindicted criminal conduct. In fact, Carr agreed that the plea agreement contained "merely a brief summary of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case." (Crim. Doc. 136 at 23–24.) During his plea hearing, Carr affirmed the veracity of the facts contained in the plea agreement. (Crim. Doc. 400 at 30.) Accordingly, the record refutes Carr's meritless claim that the United States breached the plea agreement.

## IV.    No Certificate of Appealability

Carr is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Carr must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate

24

either the merits of the claims or the procedural issues, Carr is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## V.    Conclusion

Carr's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Carr must obtain permission from the circuit court to appeal in forma pauperis. The clerk is directed to enter a **JUDGMENT** against Carr, terminate any pending motions, **CLOSE** this case, and enter a copy of this order in the criminal case.

**ORDERED** in Tampa, Florida, on September 8, 2025.

Kathryn Kimball Mizelle
United States District Judge